UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
Case No. 9:15-CV-80072-MIDDLEBROOKS/BRANNON

BOW DOWN, INC., a Florida corporation,
    Plaintiff,

v.

MOUNT VERNON FIRE INSURANCE
COMPANY, a foreign company,
    Defendant.
_____/

PLAINTIFF'S NOTICE OF SERVICE OF EXPERT REPORT

Plaintiff, BOW DOWN, INC., by and through its undersigned attorney, and pursuant to the Federal Rules of Civil Procedure 26(a)(2) and this Court's Order, hereby provides notice that it has served on Defendant the attached report of expert witness, George W. Erickson.

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 19, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the forgoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

        Respectfully submitted,

        TODD S. STEWART, P.A.

        s/ Todd S. Stewart
        The Law Offices of Todd S. Stewart, P.A.
        FL Bar No.: 0940674
        824 West Indiantown Road
        Jupiter, FL  33468
        (561) 743-2002
        Attorney for Plaintiffs
        Primary: Todd@TrialCounselor.com
        Secondary: Alicia@TrialCounselor.com

**THE LAW OFFICES OF TODD S. STEWART, P.A.**

Plaintiff's Notice of Service Of Expert Report
Case No.  9:15-CV-80072- MIDDLEBROOKS/BRANNON

# SERVICE LIST
## BOW DOWN, INC. v. MOUNT VERNON FIRE INSURANCE COMPANY,
### Case No.: 9:15-CV-80072-JIC

**TODD S. STEWART, ESQ.**
The Law Offices of Todd S. Stewart,
P.A. 824 W Indiantown Road
Jupiter, Florida 33458
Todd@trialcounselor.com
Alicia@trialcounselor.com
*Via Electronic Mail and/or Regular U.S. Mail*

**ROBERT C. OKON, ESQ.**
Clarfield, Okon, Salmone & Pincus, P.L.
500 Australian Avenue South, Suite 730
West Palm Beach, FL 33401
Telephone: (561) 713-1400
Facsimile: (888) 449-3555
rokon@cosplaw.com
rhollingsworth@cosplaw.com
*Via Electronic Mail and/or Regular U.S. Mail*

**RORY ERIC JURMAN, ESQ.**
Fla. Bar No. 194646
Email: rjurman@fowler-white.com
*Via Electronic Mail and/or Regular U.S. Mail*
**AARON M. DMISZEWICKI, ESQ.**
Fla. Bar No. 111455
Email: admiszewicki@fowler-white.com
*Via Electronic Mail and/or Regular U.S. Mail*
**STEPHEN R. GROSS, ESQ.**
Fla. Bar No. 27849
Email: sgross@fowler-white.com
*Via Electronic Mail and/or Regular U.S. Mail*

**FOWLER WHITE BURNETT, P.A.**
One Financial Plaza, Suite 2100
100 Southeast Third Avenue
Fort Lauderdale, Florida 33394
Telephone: (954) 377-8100
Facsimile: (954) 377-8101

**THE LAW OFFICES OF TODD S. STEWART, P.A.**



*Insurance Consultants*
# SIVER

805 Executive Ctr. Dr. W., Ste. 110
St. Petersburg, Florida 33702-2407
Post Office Box 21343
St. Petersburg, Florida 33742-1343
Telephone: (727) 577-2780
Fax: (727) 579-8692

Email: gerickson@siver.com

May 19, 2015                                                                  **SENT BY EMAIL**

Mr. Todd S. Stewart
The Law Offices of Todd S. Stewart, P.A.
824 West Indiantown Road
Jupiter, Florida 33458

Subject:    Bow Down, Inc. v. Mount Vernon Fire Insurance Company
            Expert Report

Dear Mr. Stewart:

This letter-report regarding the above styled matter (hereinafter "this Litigation") is furnished pursuant to Federal Rule of Civil Procedure 26(a)(2).

**Background**

*Introduction and Vitae*

My name is George W. Erickson, and I reside at 8456 7th Way North, St. Petersburg, Florida 33702. I am a graduate of the University of South Florida (Bachelor of Arts, Magna Cum Laude - December 1992). I am also a graduate of Duke University School of Law (Juris Doctorate and Masters of Legal Studies – June 1996). In addition, I hold the Chartered Property & Casualty Underwriter (CPCU) designation from the American Institute for Property & Liability Underwriters, Inc.

My professional memberships include membership in the Society of Chartered Property & Casualty Underwriters, Florida Bar, the Public Risk Management Association, the Florida Association of Self-Insurers, the Risk and Insurance Management Society and the Florida Educational Risk Management Association.

Apart from my years in law school (1993-1996), I have, worked in various capacities in the insurance industry since 1988.

SIVER INSURANCE CONSULTANTS

Mr. Todd Stewart
May 19, 2015
Page 2

From 1988 to 1990, I was employed as an excess and surplus lines broker/underwriter, specializing in marine and aviation risks with Hull and Company, Inc in St. Petersburg, Florida.

From 1990 to 1992, I was employed as a general lines insurance agent and participated in the management of a commercial lines insurance agency in Clearwater, Florida. This agency was called Erickson-Douglass, Inc. until 1991 when it was sold and became the Lokey Insurance Agency.

I have been employed with Siver Insurance Consultants ("Siver") since January of 1997. Since my employment in 1997, I have held the position of Senior Consultant in the firm's property and casualty insurance consulting practice. In addition, I am currently the Executive Vice-President, and a co-owner, of Siver. I also am a member of the Board of Directors of Siver and hold the positions of Corporate Secretary and Corporate Treasurer with the firm. Siver is in the principal business of providing objective and impartial advice to insurance buyers, typically, governments, nonprofit institutions, business organizations, and private individuals.

I regularly participate in continuing education and typically attend 4-5 days of educational seminars relating to various aspects of the insurance industry every year.

Throughout my professional involvement in the insurance business, I have been actively involved in matters relating to the drafting, underwriting, rating, placement, purchase, use and interpretation of property and casualty insurance policies, including insurance policies similar to the insurance policies which are the subject of my opinions in this Litigation.

I have been a guest speaker and lecturer for numerous trade and legal organizations on various property and casualty insurance issues including issues relating to general liability insurance policies.

*Compensation and Terms of Engagement*

Attached to this report is my curriculum vitae as Exhibit A. I have not testified as an expert in any case in the last four years. I have not authored any publications in the last ten years. My firm (Siver) is being compensated at the rate of $350.00 per hour for my time, up to $350.00 per hour for other consultants, and $50.00 per hour for support staff.

I have been retained by the Law Offices of Todd S. Stewart, P.A., on behalf of Bow Down, Inc. ("Bow Down"), to express my opinions, as a person familiar with the history and customs and practices of the insurance industry, with respect to various issues relating to the general liability insurance policy (policy #NPP2552980) purchased by Bow Down from Mount Vernon Fire Insurance Company ("Mount Vernon"), which was effective February 28, 2014 ("the Mount Vernon Policy").

SIVER INSURANCE CONSULTANTS

Mr. Todd Stewart
May 19, 2015
Page 3

More specifically, I have been asked to express my opinions with respect to the applicability of coverage for Bow Down under the Mount Vernon Policy for Bow Down's liability arising out of the drowning incident of May 17, 2014, as outlined in the complaint which was filed against Bow Down (and other defendants) on October 1, 2014 ("the Underlying Complaint").

*Basis Of My Opinions – In General*

My opinions, as expressed in this letter-report, are based on my education, training, experience, and extensive reading of insurance industry materials. In addition, I have reviewed and considered the documents listed in Exhibit B, which were provided to me by the Law Offices of Todd Stewart, P.A.

**Summary of Opinions**

In my opinion, the Mount Vernon Policy should provide defense and indemnity coverage for Bow Down for the liability and alleged liability of Bow Down arising out of the claims alleged in the Underlying Complaint.

In its Answer, Affirmative Defenses, and Counterclaim to Plaintiff's Complaint ("the Mount Vernon Answer"), Mount Vernon asserts several bases upon which it contends that Bow Down should not be covered under the Mount Vernon Policy for liability arising out of the allegations in the Underlying Complaint. In my opinion, as I will discuss in more detail below, none of Mount Vernon's arguments should act to preclude coverage for Bow Down under the Mount Vernon Policy.

**Discussion of Opinions**

*Interpretation of Exclusionary Language – In General*

Under the customs and practices of the insurance industry, and the generally accepted rules of construction of insurance policy language, exclusionary language is to be construed strictly and in favor of granting coverage to the insured, not denying coverage.

*Mechanical Rides Exclusion*

Endorsement L387 (3-06) to the Mount Vernon Policy contains the following exclusionary wording:

> EXCLUSION – MECHANICAL RIDES
>
> This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" arising out of the operation, maintenance, existence or use of any mechanical ride or riding device.

**SIVER INSURANCE CONSULTANTS**

Mr. Todd Stewart
May 19, 2015
Page 4

Mount Vernon contends that some or all of the claims against Bow Down, as outlined in the Underlying Complaint, are excluded by this exclusion.

In my opinion, this exclusion would not preclude coverage for Bow Down because, strictly construing the language of the exclusion as it is written, the zip-line would not be considered to be a "mechanical ride or riding device" as such term is used in this exclusion.

Further, in my opinion, even if the zip-line were determined to be a "mechanical ride or riding device," the exclusion would still be inapplicable because, based upon my understanding of the facts in the case, the drowning incident did not "arise out of" the operation, maintenance or existence of the zip-line. Instead, as I understand the facts, the victim had completed his zip-line activities and come to shore, and at that time, he swam back out into the pond in which he subsequently drowned. As such, since the victim was no longer using the zip-line, his injuries did not arise out of the operation, maintenance or existence of the zip-line and therefore, the exclusion does not apply.

*Participation in Athletic Activity, Physical Activity or Sports Exclusion*

Endorsement L536 (09-09) to the Mount Vernon Policy contains the following exclusionary language:

> EXCLUSION – PARTICIPATION IN ATHLETIC ACTIVITY, PHYSICAL ACTIVITY OR SPORTS
>
> This insurance does not apply to:
> 1. "Bodily injury", "property damage", "personal and advertising injury" or medical payments to or for participants arising out of or resulting from practice, instruction, participation, demonstration or any athletic activity, physical activity or sport; including but not limited to activity in preparation for or following such activity or sport.
> 2. "Bodily injury", "property damage" or "personal and advertising injury" sustained by the spouse, child, parent, brother or sister of such participant(s) as a consequence of "bodily injury", "property damage" or "personal and advertising injury" to such participant(s).
> 3. Any claims or "suits" by any person or organization for damages because of such "bodily injury", "property damage" or "personal and advertising injury" including damages for care and loss of services.
>
> This exclusion shall apply whether or not the athletic activity, physical activity or sport is performed in a class, competition, exhibition, game, practice or other setting.

Mount Vernon contends that some or all of the claims against Bow Down, as outlined in the Underlying Complaint, are excluded by this exclusion.

In my opinion, this exclusion would not preclude coverage for Bow Down because, strictly construing the language of the exclusion as it is written, swimming, which is the activity the victim was engaged when the drowning incident occurred, would not be

Mr. Todd Stewart
May 19, 2015
Page 5

considered to be an "athletic activity, physical activity or sport" as such term is used in this exclusion.

In the Mount Vernon answer, Mount Vernon contends that swimming is a sport. In my opinion, while there is a sport that is based upon the activity of swimming, at the time of the drowning incident, the victim was not a participant in the sport of swimming. The sport of swimming involves engaging in the activity for competitive purposes. As I understand the facts, the victim was not engaging in any sort of competitive swimming activity at the time of drowning incident.

Likewise, because the victim was merely engaging in recreational swimming activity at the time of the drowning incident, in my opinion, the victim was also not engaged in an athletic activity while swimming. In my opinion, strictly construing the language, in order for swimming to be considered an athletic activity, it would have to be done for competitive or personal fitness purposes. There is no evidence which would make me think that those were the purposes for the victim to be swimming.

Finally, Mount Vernon could contend that the exclusionary language applies because the victim was involved in "physical activity" at the time of the occurrence. In my opinion, in this exclusion, the term "physical activity" must once again be strictly construed and must read in context in conjunction with the terms accompanying it, "athletic activity" and "sport."

In my opinion, to interpret the term "physical activity" in any other than the most narrow terms would lead to an unreasonably broad application of the exclusionary language. If the term, "physical activity" is given anything other than a very narrow, contextually consistent, interpretation, this exclusion could be interpreted to exclude any bodily injured which is caused by any physical activity. In my opinion, this type of overbroad interpretation could lead to the exclusion of nearly all bodily injury which in almost every instance can be argued to arise out of some form of physical activity.

As an example, many slip and fall injuries could be argued to arise out of the physical activity of "walking." However, even though walking does qualify under some interpretations of the term as a "physical activity," to interpret the exclusion to exclude all claims arising from the activity of walking would be an unreasonably overbroad interpretation.[1] Likewise, in my opinion, it would be similarly overbroad to interpret the language to exclude all swimming simply because one could interpret swimming to be a "physical activity."

---

[1] It is worth noting that, in some circumstances, "walking" can be an athletic activity as a form of exercise and also, at times, "walking" can be a competitive sport.

SIVER INSURANCE CONSULTANTS

Mr. Todd Stewart
May 19, 2015
Page 6

*Climbing, Rebounding and Interactive Games and Devices Exclusion*

Endorsement L607 (11-04) to the Mount Vernon Policy contains the following exclusionary language:

> EXCLUSION FOR CLIMBING, REBOUNDING AND INTERACTIVE GAMES AND DEVICES
>
> A. This insurance does not apply to "bodily injury", "property damages", "personal and advertising injury" or medical expenses including damages for care and loss of services:
> (i) Arising from the ownership, maintenance, operation, sponsorship, set-up or take-down or other use of:
> (a) Rock climbing walls, Velcro walls and similar scaling devices;
> (b) Gymnastic equipment;
> (c) Trampolines and similar rebounding devices;
> (d) "Moon Bounces", "Moon Walks", "Space Walks", and similar inflatable games and devices;
> (e) Laser tag, bungee jumping, Sumo wrestling, human spheres, water slides and similar interactive games and devices.
> (f) Advertising balloons, rooftop balloons, helium blimps and similar devices by any Insured or by any person for which any Insured may be held liable in any capacity.

Mount Vernon contends that some or all of the claims against Bow Down, as outlined in the Underlying Complaint, are excluded by this exclusion.

In my opinion, this exclusion would not preclude coverage for Bow Down because, strictly construing the language of the exclusion as it is written, contains a rather long list of specific types of devices and items which are excluded, and there is no mention of zip-lines in the exclusion. Strictly construing this exclusionary language, in my opinion, it would not exclude injuries resulting from zip-line.

Further, in my opinion, even if the zip-line were determined to fall under the excluded items and devices in the endorsement, the exclusion would still be inapplicable because, based upon my understanding of the facts in the case, the drowning incident did not "arise out of" the "ownership, maintenance, operation, sponsorship, set-up or take-down or other use of" the zip-line. Instead, as I understand the facts, the victim had completed his zip-line activities and come to shore, and at that time, he swam back out into the pond at which point he subsequently drowned. As such, since the victim was no longer using the zip-line, his injuries did not arise out of the "ownership, maintenance, operation, sponsorship, set-up or take-down or other use of" the zip-line and therefore, the exclusion does not apply.

SIVER INSURANCE CONSULTANTS

Mr. Todd Stewart
May 19, 2015
Page 7

*Application/Binding Issues*

In the Mount Vernon Answer, Mount Vernon asserts that the policy should be void because, according to Mount Vernon, during the application process, "Bow Down and/or its agent represented that they did not 'participate in, organize, or sponsor any events that include fireworks, firearms, hunting, water hazards, overnight camps, bonfire, haunted attractions, hayrides, or air shows." Mount Vernon then goes on to allege that Bow Down engaged in the above listed activities and therefore materially misrepresented themselves to Mount Vernon, which in turn should result in the voidance of the Mount Vernon Policy.

In my opinion, there is no evidence to show that, at the time of the application process, that Bow Down participated in, organized, or sponsored any of the types of events listed in binding requirements and quotation documentation. In my opinion, I would have to assume that the only two activities in the list which Mount Vernon is contending are even possibly related to Bow Down's activities are "water hazards" and "overnight camps." In my opinion, based upon information I have been provided about their activities, Bow Down did not participate in, organize or sponsor any activities that included water hazards or overnight camping.

It is not clear to me what is meant by the term "water hazard." The term is undefined in all documentation which I have been provided. Based solely on a plain language reading of the term, the most common usage of the term appears to be related to the sport of golf. Giving Mount Vernon the benefit of the doubt and assuming that a different definition of "water hazard" intended, in my opinion, the term "water hazard" would once again be narrowly interpreted and would not include taking kids to swim as a prohibited activity.

With respect to the term "overnight camping," in my opinion, based upon the information I have been provided, the activities in question did not constitute what most people would consider to be "camping." My understanding is that, while the participants did spend the night on the excursion in question, they did not sleep outdoors in a "camping" setting. Instead, as I understand it, they slept indoors, in houses. As such, and once again narrowly interpreting the term in question, in my opinion, there was not camping involved, and there was no need to disclose any camping activities during the application process.

In addition, to the extent the limitations on specific prohibited activities were disclosed in a binding document, that document would only have effect on coverage until such time as the actual policy is issued. Under the customs and practices of the insurance industry, coverage conditions and limitations that are contained in a preliminary binding document only have effect and impact prior to the issuance of the actual policy. Once the policy is issued, it is the policy terms which control the scope of the coverage. In my opinion, it is worth noting that the activities of overnight camping and water hazards are not excluded

SIVER INSURANCE CONSULTANTS

Mr. Todd Stewart
May 19, 2015
Page 8

in the policy itself, they are only mentioned in certain documents as conditions of binding. As support, for this position on the custom and practice of policy documents superceding binding documents, the following quote from Couch on Insurance is supportive:

> "A binder, the preliminary document used in the insurance industry to temporarily bind coverage pending issuance of a policy, is of no effect or import once the policy is issued."[2]

### Modification of Opinions

Any opinions and conclusions expressed in this report are subject to change and revision pending my receipt, identification and/or review of additional relevant materials (including, but not limited to, the opinions of experts retained by Mount Vernon) which have not yet been received or identified as of the date of this report. Further, I expressly retain the right to alter, modify, change, or add to these opinions and conclusions, and offer additional opinions as further information becomes available.

Very truly yours,

SIVER INSURANCE CONSULTANTS
George W. Erickson, JD, CPCU, LLM

Enclosures:   Exhibit A: CV
              Exhibit B: Documents Provided

---

[2] Nature, purpose and validity, 1A Couch on Ins. Sect. 13:1.

SIVER INSURANCE CONSULTANTS

EXHIBIT A:  Curriculum Vitae

**GEORGE W. ERICKSON, JD, CPCU, LLM**
**Executive Vice President and Senior Consultant**

EDUCATION

Graduate of Duke University School of Law (Juris Doctorate and Masters - International and Comparative Law), 1996; Attended the Institute of Transnational Law, Brussels, Belgium, 1994; Cum Laude Graduate of University of South Florida (B.A. - Finance), 1992. Received the Chartered Property and Casualty Underwriter (CPCU) designation from the American Institute for Chartered Property and Casualty Underwriters (AICPCU) in 2001.

BUSINESS EXPERIENCE

Admitted to The Florida Bar, October 1996; Senior Consultant with Siver Insurance Consultants since 1997; Two years with a local agency as Property-Casualty and Life-Health Agent; Two years with an excess and surplus lines broker specializing in aviation and marine insurance and making placements with Lloyd's of London and other overseas and domestic insurance syndicates.

AREAS OF EXPERTISE

Senior consultant for property and casualty accounts.  Extensive experience in: analysis of insurance coverage; contractual risk management; litigation support consulting and expert witness testimony for insurance claims and coverage issues; marketing, implementation and auditing of insurance and risk management programs for governments and private enterprise. Has been a guest lecturer on numerous insurance and risk management related-topics at educational events for the Risk and Insurance Management Society (RIMS), the Public Risk Management Association (PRIMA), the Florida Trial Lawyers Academy (FTLA), the Coalition of Florida Condominium Associations (CFCA), the Florida Educational Risk Management Association (FERMA), and the Association of Legal Administrators (ALA).

PROFESSIONAL ASSOCIATIONS

Florida Bar
Society of Chartered Property and Casualty Underwriters
Risk and Insurance Management Society (RIMS)
Public Risk Management Association (PRIMA)
Florida Educational Risk Management Association (FERMA)
Florida Association of Self-Insurers (FASI)

**Exhibit B: List of Documents Provided**

1. Reservation of Rights Letter, June 27, 2014
2. Okeechobee County Sheriff's Office Incident Report
3. Defendants Answer, Affirmative Defenses, and Counterclaim
4. Mount Vernon Fire Insurance Company Policy #NPP2552980C
5. Bow Down Endorsement ltr 1/28/2011
6. Bow Down Underwriting 1/28/2011
7. Bow Down Renewal Documents 2011
8. Bow Down Renewal Documents 2012
9. Bow Down Renewal Documents 2013
10. Bow Down Renewal Documents 2014
11. Email to Baker from Brian Gaughan 2/17/12