UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

BOW DOWN, INC., a Florida corporation,

     Plaintiff,

v.

MOUNT VERNON FIRE INSURANCE
COMPANY, a foreign company,

     Defendant.

CASE NO. 9:15-cv-80072-DMM

## RESPONSE TO BOW DOWN'S MOTION TO DISMISS OR STAY COUNTERCLAIM AND MOTION FOR LEAVE TO DISMISS MAIN ACTION

Defendant, MOUNT VERNON FIRE INSURANCE COMPANY ("Mount Vernon"), by and through its undersigned counsel, hereby files its Response to Bow Down's Motion to Dismiss or Stay Counterclaim and Motion for Leave to Dismiss Main Action [D.E. 21], in accordance with the Court's recent denial of Mount Vernon's Motion for Extension of Time [D.E. 39], and in support thereof states as follows:

This case has a long and convoluted procedural history. Nearly nine months after Mount Vernon first brought suit against Bow Down[1], Bow Down has still not filed an answer to any of Mount Vernon's allegations. Instead, Bow Down has engaged in repeated attempts to delay litigation, obfuscate the issues, and otherwise wrongfully avoid federal court jurisdiction. By way of example, Bow Down has engaged in the following acts, specifically:

---

[1] This case was styled *Mount Vernon Fire Insurance Company v. Bow Down, Inc.*, Case No. 9:14-81157-DMM, was also before this Court, and will be referred to as the "2014 Case".

- Filed its own state court complaint *four months* after Mount Vernon filed the 2014 Case (which was properly removed by Mount Vernon), and then moved to dismiss the 2014 Case based on the existence of a "pending" state court action.
- Despite losing its motion to dismiss and despite losing its motion to remand this case, Bow Down has nonetheless filed a new third-party complaint in state court in an attempt to **again** divest this Court of jurisdiction. This third-party complaint is not even properly pleaded.
- Bow Down has interfered in the process of discovery by filing a baseless motion for protective order, which ignores both its own stipulation and the strictures of the Federal Rules of Civil Procedure.
- Bow Down has filed a baseless motion to compel deposition dates, despite Mount Vernon's efforts to coordinate an agreeable date and providing Bow Down with reasonable dates that are well within the discovery deadline.
- Bow Down has repeatedly mischaracterized its efforts to confer with Mount Vernon pursuant to the requirements of S.D. Fla. L.R. 7.1.

In short, virtually every action Bow Down has taken and every motion Bow Down has filed in this case has been for the sole purpose of delaying an adjudication. The reasons for doing so are plain and transparent. Mount Vernon has, since long before even the 2014 Case was filed, been defending Bow Down under a reservation of rights. Thus, Bow Down seeks to delay an adjudication as to Mount Vernon's duty to defend as long as possible and wrongfully avoid federal court jurisdiction in order to continue reaping the benefits of a defense to which it is not entitled.

## <u>Memorandum of Law</u>

The case at bar is an action for declaratory relief. Both Bow Down and Mount Vernon seek a declaration from this court as to the existence of coverage under the policy issued to Bow Down for a claim arising out of the drowning death of a minor while swimming in a lake. Based on the allegations of the underlying complaint and the demand letter for policy limits the Estate provided to Bow Down, Mount Vernon does not believe its policy provides any coverage for the claim and reserved its rights to deny coverage.

- 2 -

In order to expedite the resolution of the underlying claim, Mount Vernon initiated the 2014 Case to determine the rights and responsibilities of the parties under the insurance policy. That is ultimately the purpose of a declaratory judgment action; <u>to quickly and efficiently adjudicate the relationship between parties, separate and apart from the underlying liability action</u>. Bow Down has never contested the fact that there is complete diversity between Mount Vernon and Bow Down, nor has it ever contested that the amount in controversy exceeds $75,000.00. Thus, this Court unquestionably has the authority to exercise jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332 and 2201.

Although Mount Vernon concedes that, unlike the *last time* the parties litigated this issue, there is currently a pending state court action, Bow Down has nonetheless not asserted any facts which would weigh in favor of dismissing this action. Instead, Bow Down, once again, has asserted that "judicial economy would best be served by having all issued resolved in one action before one judge." There is essentially only one factual issue in the declaratory judgment— whether or not O'Quan Reed was swimming at the time of his death. Both the Estate (in its demand letter) and Bow Down themselves, [D.E. 30] ("A young boy tragically died while swimming at an event hosted by BOW DOWN."), have admitted this fact. There is no need to entangle Mount Vernon in the state court wrongful death action solely to adjudicate a fact that has already been admitted.

Furthermore, Bow Down's actions fly directly in the face of any sort of "judicial economy." The filing of a ***third*** declaratory judgment action, which once again seeks relief on issues identical to those raised by ***Bow Down itself*** in this action, has only served to **<u>increase</u>** the costs of litigation and **<u>waste</u>** judicial resources. Dismissing this action on the basis of judicial

economy would only serve to reward the frivolous duplication of litigation, which the third-party

action exemplifies.

**I.      The _Ameritas_ Factors Weigh In Favor of Retaining Jurisdiction.**

The Eleventh Circuit has set forth a list of nine non-exclusive factors for the district

courts to consider in deciding whether to exercise discretionary jurisdiction over a declaratory

judgment action:

> (1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;
>
> (2) whether the judgment in the federal declaratory action would settle the controversy;
>
> (3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;
>
> (4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing"—that is, to provide an arena for a race for res judicata or to achieve a federal hearing in a case not otherwise removable;
>
> (5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;
>
> (6) whether there is an alternative remedy that is better or more effective;
>
> (7) whether the underlying factual issues are important to an informed resolution of the case;
>
> (8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
>
> (9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

_Ameritas Variable Life Ins. Co. v. Roach_, 411 F.3d 1328, 1331 (11th Cir. 2005). The court is not

required to weigh all factors equally or even to consider all of the factors. Nevertheless, a

comprehensive review of the *Ameritas* factors shows that not a single factor weighs in favor of dismissing this action.

###### A.   <u>The Strength of the State's Interest in Having These Issues Raised in the State Courts is Minimal.</u>

The strength of the state's interest in having these issues raised in the state courts is minimal. Although Mount Vernon concedes, as it must, that the substantive law at issue in this matter is the law of the state of Florida, that is true in every case arising in diversity. *Hanna v. Plumer*, 380 U.S. 460, 465 (1965). However, the outcome of this case does not depend on Florida law or public policy, except to the extent Florida law creates the standard for determining an insurer's duty to defend or indemnify. This is a well-settled area of Florida law and it is a standard that is applied by the federal courts in resolving similar disputes frequently. Thus, continued exercise of this Court's jurisdiction is unlikely to lead to any increased tension between the state and federal judiciary, and the state's interest in resolving this dispute is minimal. Indeed, the most obvious interest the state judiciary has in resolving this dispute is that a citizen of Florida is one of the parties. However, this minimal interest actually weighs ***in favor*** of the continued exercise of jurisdiction. The very purpose of diversity jurisdiction vested in the federal courts by Article III of the Constitution and by 28 U.S.C. § 1332 is to ensure that disputes between citizens of different states are decided by an impartial federal judiciary. *Guaranty Trust of N.Y. v. York*, 326 U.S. 99, 111 (1945) ("Diversity jurisdiction is founded on assurance to non-resident litigants of courts free from susceptibility to local bias."). The case at bar, which involves a dispute between a foreign corporation and a Florida non-profit organization, is precisely the reason the federal courts were granted original jurisdiction over cases based on diversity.

Bow Down has once again relied upon arguments that because Mount Vernon sought a license to sell insurance in Florida, it is no longer a foreigner, and has subjected itself to Florida state courts. As an initial matter, the subject policy is a surplus lines policy, issued pursuant to Fla. Stat. § 626.913, *et seq*. Surplus lines policies are issued specifically by insurers who are ***not*** licensed to sell policies in the state of Florida, and can ***only*** be sold by agents specifically licensed to do so. That alone undercuts Bow Down's argument regarding "subject[ion]" to Florida's interests. But more importantly, any argument about where Mount Vernon has subjected itself misses the point. Personal jurisdiction and subject matter jurisdiction are not the same. The former deal whether or not a court has the power to adjudicate a claim as to a particular defendant, whereas the letter concerns whether or not a court has the power to hear a claim at all. Neither Bow Down nor Mount Vernon has ever contested that Florida courts have personal or subject matter jurisdiction over Mount Vernon. But that does not change the fact that Mount Vernon is a citizen of Pennsylvania pursuant to 28 U.S.C. § 1332(c)(1), and that the parties are completely diverse.

**B.    Judgment in the Declaratory Action Would Settle the Controversy.**

As for the second *Ameritas* factor, judgment in the declaratory action would settle the controversy. This is purely a coverage case, and as Judge Brannon mentioned off-hand in the parties' pre-trial scheduling conference, not a particularly complex one. No facts will be decided in the coverage action that might conflict with the underlying case. Florida law is quite clear that an insurer's duty to defend is governed by the terms of the insurance policy and the allegations of the complaint. *Hartford Accident & Indem. Co v. Beaver*, 466 F.3d 1289, 1292 (11th Cir. 2006) (citing *Jones v. Fla. Ins. Guar. Ass'n*, 908 So. 2d 435 (Fla. 2005)). Thus, if the complaint on its face does not allege a claim that is covered by an insurance policy, but "actual facts" developed

in the discovery process or otherwise show that there is potential coverage under the insurance policy, the duty to defend is still not triggered. *See Fed. Ins. Co. v. Applestein*, 377 So. 2d 229, 233 (Fla. 3d DCA 1979). Furthermore, under Florida law, there is no duty to indemnify if there is no duty to defend. *Trailer Bridge, Inc. v. Ill. Nat'l Ins. Co.*, 657 F.3d 1135, 1146 (11th Cir. 2011) (applying Florida law).

It is important to note that Mount Vernon has assumed the defense of Bow Down in the underlying action. It is thus entitled to know whether there is coverage for the *alleged* loss under its *policy*. Thus, the entire controversy *as to coverage*, which is entirely distinct from the underlying action, would be settled by a final determination of coverage from this Court. Thus, this factor weighs in favor of retaining jurisdiction.

C. **This Action Will Serve a Useful Purpose in Clarifying the Legal Relations at Issue.**

Bow Down asserts that, "[W]hile the federal declaratory judgment action would clarify some of the issues involved, it would only do so partially and in a piecemeal fashion." This misstates the factor, which only asks whether the action would clarify the relationship between the parties—which it undoubtedly would—not whether it would do so piecemeal. In fact, this action would be extremely useful in determining the existence or non-existence of coverage, such that the parties can determine how to proceed. Indeed, the existence of coverage as between an insurer and insured *is* the legal relation at issue, and is the entire purpose behind filing a declaratory judgment action. Thus, this factor also weighs in favor of jurisdiction.

D. **Bow Down Is Engaged in Procedural Fencing, Not Mount Vernon.**

Bow Down has failed to even address the fourth *Ameritas* factor. Instead, it puts forward only Mount Vernon's requested trial date (which it requested in coordination with Bow Down)

and Mount Vernon's voluntary dismissal of the 2014 Case as somehow suggesting grounds for dismissal of *this* case.

Any allegations of procedural fencing lay squarely on Bow Down, who has repeatedly sought to divest this Court of jurisdiction in order to obtain a judgment in a forum that Bow Down considers to be more favorable. After improperly attempting dismissal of the 2014 Case by filing a declaratory judgment action in state court ***four months*** after the 2014 Case had been filed, and after ***losing*** that motion, Bow Down has once again filed a third-party complaint in state court, this time not removable, in an attempt to flee from federal court. At least one declaratory judgment action in this matter has been pending before this Court since September of 2014. This 2015 Case was initially filed by ***Bow Down***, and was properly removed to federal court. Bow Down now seeks to dismiss its own action in favor of ***another*** of its own actions, filed ***four months*** after the inception of the 2015 Case, in an attempt to avoid a judgment by this Court. If that is not procedural fencing, nothing is.

### E.     Hearing This Action Will Not Increase Friction Between State and Federal Courts, Nor Will It Improperly Encroach on State Jurisdiction.

This declaratory relief action will neither increase friction between state and federal courts nor improperly encroach on state jurisdiction. Declaratory actions are frequently determined in federal court with pending liability actions in state court. Furthermore, the underlying state court liability action is not concerned with the same facts as the declaratory judgment action. The wrongful death action is concerned with *why* O'Quan Reed died. The declaratory judgment action, on the other hand, is concerned with *how* O'Quan Reed drowned. Thus, a ruling in the wrongful death action will have no effect on the declaratory judgment action, and vice versa.

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

Any alleged friction between the state and federal courts with respect to the two pending declaratory judgment actions once again falls squarely on Bow Down's shoulders. Bow Down has filed yet another declaratory judgment action in state court, this time in a case that is plainly not removable, in an attempt to wrest jurisdiction from this Court. Bow Down cannot be permitted to file late actions in state court and then claim that the presence of long-pending federal actions provide a source of "friction." There would be no friction but for Bow Down's continued gamesmanship. Accordingly, this *Ameritas* factor weighs against dismissal as well.

**F.      There Is No Better or More Effective Remedy.**

There are no better or more effective remedies to this Court hearing this case. Because of Florida non-joinder statute and the mutually exclusive nature of relevant evidence in the wrongful death action and the declaratory judgment actions, making determinations as to both coverage and liability in the same action would actually result in a less efficient adjudication of the entire case. As previously stated, Bow Down's suggestion that a consolidated state court action will resolve "all issues between the parties" implies the existence of grossly more "issues" between Bow Down and Mount Vernon than are actually present, and suggests that Mount Vernon may have "issues" with some or all of the underlying parties. The only issue of fact between Bow Down and Mount Vernon is whether or not O'Quan Reed was swimming at the time of his death. Both the Estate (in its demand letter) and Bow Down themselves, [D.E. 30] ("A young boy tragically died while swimming at an event hosted by BOW DOWN."), have admitted this fact. There are currently no outstanding issues between Mount Vernon and any of the other underlying defendants. There is thus no need to embroil Mount Vernon in the state court wrongful death action solely to adjudicate a fact that has already been admitted. Finally, federal courts frequently decide issues of insurance contract interpretation and the laws

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

governing such interpretation are well settled in the state of Florida. Thus, at best, there is an alternative remedy, but not one that is plainly better or more effective. Accordingly, this factor does not favor dismissal.

**G.      The Underlying Factual Issues Are Not Important to an Informed Resolution of This Case.**

As previously discussed, no factual issues need to be determined for a declaration of rights under Mount Vernon's policy. This is because determinations of coverage are based solely on the language of the underlying complaint and the language of the policy. *Beaver*, 466 F.3d at 1292. There is no dispute by any party that O'Quan Reed drowned while swimming. The Underlying Action will thus involve significant discovery into Bow Down's alleged negligence. None of those facts are relevant to the coverage dispute. Thus, forcing Mount Vernon to participate in that litigation will only serve to increase the cost of that litigation and will be of no assistance in resolving the coverage issues between Mount Vernon and Bow Down. Once again, Bow Down is reaping the benefits of Mount Vernon paying its defense costs in the underlying action while simultaneously attempting to forestall a judgment as to whether such defense is owed. This factor thus also weighs in favor of this Court's retaining jurisdiction.

**H.      The State Trial Court Is In No Better Position to Decide this Case.**

Once again, no facts need to be evaluated for a judicial declaration of rights under the Policy. The state court is preoccupied with the factual issues regarding the alleged negligence of Bow Down, an issue not relevant to the instant coverage dispute. The state court would be in no better position to decide this case than this Court, because, as previously mentioned, the declaratory judgment action cannot be joined to the underlying tort action. At best, a state court would be in the *same* position to decide this case as the federal court, and due to the rampant

CASE NO. 9:15-cv-80072-DMM

congestion of the state court's docket, the federal court is likely in a *better* position to conclude this action swiftly and efficiently, before Mount Vernon is forced to expend considerable resources defending a suit for which no coverage is ultimately owed. This factor thus also weighs in favor of the Court retaining jurisdiction.

I.   **There Is No Close Nexus Between the Underlying Factual and Legal Issues and State Law and/or Public Policy.**

As Bow Down rightfully notes, there are no federal law issues presented. However, that argument is belied by the fact that Congress has seen fit to grant original jurisdiction to cases arising in diversity, as well as questions implicating federal questions. Thus, the mere fact that no federal question exists cannot alone be the basis for abstention in this (or even most) diversity actions. Bow Down has asserted that the facts underlying both the underlying action and the declaratory judgment action are essentially the same, and that a state court would thus be best able to adjudicate both claims. At the risk of once again being repetitive, that is not the case. In the underlying wrongful death claim, the issue before the court is *why* O'Quan Reed died, i.e., was Bow Down negligent, and did that negligence cause Reed's death. On the contrary, in the coverage action, the question is not *why* Reed died, but *how* he died, i.e., what activity was Reed engaged in when he died. These two questions, while related, are not the same. *See Northland Ins. Co. v. Top Rank Trucking*, 823 F. Supp. 2d 1293, 1296 (M.D. Fla. 2011) ("[T]he state-court case and this case do not present the same legal issues. The issues in the state-court case are Hines's alleged negligence and Top Rank's alleged vicarious liability. The only question presented in this case is whether, with respect to Rojas's death, Northland incurs any obligations arising out of its insurance policy with Top Rank."). In any case, although this action will be determined under Florida law, that Florida law relating to coverage is well settled. "[T]his Court

- 11 -

is more than capable of applying the necessary state law, so this does not require the Court to abstain." *Stonington Ins. Co. v. Agric. & Labor Program, Inc.*, No. 08-60901-CIV, 2009 WL 302295, at *3 (S.D. Fla. Feb. 9, 2009).

Thus, each of the nine *Ameritas* factors favors exercise of jurisdiction, and this Court should retain jurisdiction of both Bow Down's claim and Mount Vernon's counterclaim in order to facilitate a speedy resolution of the coverage issue raised in those pleadings.

## II.   Bow Down's Filing of the Third-Party Complaint in State Court Violates the First Filed Rule.

For over a hundred years, the Supreme Court has mandated that when "there was concurrent jurisdiction in the two courts, and the substantive issues in the…suits were so far the same that the court first seised [sic] should proceed to the determination without interference." *Rickey Land & Cattle Co. v. Miller & Lux*, 218 U.S. 258, 262 (1910). Eleventh Circuit precedent on this issue is likewise clear: "The first-filed rule provides that when parties have instituted competing or parallel litigation in separate courts, the court initially seized of the controversy should hear the case." *Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa.*, 713 F.3d 71, 78 (11th Cir. 2013). There is no question that the third-party complaint, by which Bow Down hopes to divest this Court of jurisdiction, violates this rule, and is a direct challenge to this Court's jurisdiction. The third-party action, like the 2015 Case vis-à-vis the 2014 Case, involves an adjudication of coverage ***for the same incident*** and seeks the ***exact same relief*** as Bow Down itself seeks here. Accordingly, this Court should stay the third-party complaint and continue its adjudication of coverage in the federal courts.

A.     **Because the 2015 Case Was Filed Before the Third-Party Complaint, This Court, and Not the State Court, Should Hear the Case.**

The Supreme Court of the United States first recognized the first-filed rule over a hundred years ago. *See Rickey Land*, 218 U.S. at 262. The rule was recognized by the Fifth Circuit prior to the creation of the Eleventh Circuit. *See Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403 (5th Cir. 1971); *In re Georgia Power Co.*, 89 F.2d 218 (5th Cir. 1937). The Eleventh Circuit has recognized the validity of the first-filed rule and its importance in preserving judicial resources and preventing conflicting verdicts. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir. 1982); *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005); *Collegiate Licensing*, 731 F.3d at 78; *S. Mills, Inc. v. Nunes*, 586 F. App'x 702 (11th Cir. 2014). In other words, the first-filed rule has become a bedrock principle of American jurisprudence and "should not be disregarded lightly." *See Manuel*, 430 F.3d at 1135 (quoting *Church of Scientology of Cal. v. United States Dep't of Defense*, 611 F.2d 738, 750 (9th Cir. 1979)).

Although there is case law that suggests that the first-filed rule applies only between two *federal* courts, that case law is based on a misreading of the Eleventh Circuit's application of the rule. *Convergys* involved two concurrent actions attempting to obtain declaratory relief regarding the enforceability of non-compete agreement (the "NCA"). Convergys was a large company in Ohio. Manuel was a sales manager for one of Convergys's subsidiaries, and who lived and worked in Florida during the period of his employment, which was subject to an NCA. Eventually, Manuel decided to leave Convergys and work for Mellon Financial Corporation ("Mellon"). There was some concern by both Manuel and Mellon that the NCA would be

enforced, so Manuel's counsel advised him to move to Georgia and file a declaratory action in Georgia state court, where the law against restraint of trade was more favorable.

In very short order, Manuel filed an action for declaratory relief in a Georgia state court. Convergys removed the case to the United States District Court for the Northern District of Georgia. On the same day as the Georgia case was removed, Convergys filed a state court action in Ohio seeking a declaration that the NCA was valid, and subsequently requested that the district court defer ruling on Manuel's pending motion for summary judgment until the Ohio action had concluded. Note that, like in the instant 2015 Case and the third-party complaint, the first-filed case was in federal court; the state court action followed.

At this point, the court in *Convergys* noted that the decision to hear a declaratory judgment action is reviewed for abuse of discretion. *Convergys*, 430 F.3d at 1134 (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995)). It then cited the first-filed rule, noting that "Where two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule. We are no exception." *Convergys*, 430 F.3d at 1135 (citing to *Haydu*). The court further noted, again quoting *Haydu* that, "[W]e require that the party objecting to jurisdiction in the first-file forum carry the burden of proving *'compelling circumstances'* to warrant an exception to the first-filed rule." *Id.* (emphasis added). *Haydu* said nothing of applying the first-filed rule only to disputes between federal courts, but rather provided a fairly expansive rule. Without further explanation from the *Convergys* court (which it did not offer), it would appear to be quite a stretch to afford more weight to the non-binding "two federal courts" language, which was derived from other circuits, than to the "no difference" language which is binding on this circuit.

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

The *Convergys* court's following analysis, thus clearly demonstrates that the first-filed rule is intended to apply as between *all* cases, irrespective of the forum in which they were brought:

> "In this case, Convergys argues that Ohio is the proper forum for full resolution of this action. Convergys's two central objections to the Georgia forum are (1) that Manuel lied to Convergys about his employment with Mellon to surreptitiously win a race to the courthouse, and (2) that Manuel engaged in improper forum shopping and selected a forum with a slight and manufactured connection to the controversy. ***Central to our analysis is the fact that Georgia was the forum in which this action was filed first.*** We remain unconvinced that compelling circumstances exist to justify not only an exception to the well-established first-filed rule, but also to justify the abrogation of the district court's informed discretion."

*Convergys*, 430 F.3d at 1136 (citations omitted) (emphasis added). In short, even though Manuel had engaged in *blatant* forum shopping and had engaged in near-fraudulent behavior with respect to the defendant, that *still* did not constitute circumstances compelling enough to abrogate the first-filed rule.

Despite the broad implications of the Eleventh Circuit in *Convergys* and *Haydu*, several recent district courts in Florida have held that the first-filed rule applies only as between two federal courts. Aside from the non-binding nature of those cases on this Court, each of those cases misinterprets the rule.

In *Mt. Hawley Ins. Co. v. Sarasota Residences, LLC*, 714 F. Supp. 2d 1176, 1181 (M.D. Fla. 2010), the court posited that the first-filed rule "applies to competing claims filed in separate federal courts, not competing federal and state court actions." In support, it cites to a "close reading" of another district court case, *Allstate Ins. Co. v. Clohessy*, 9 F. Supp. 2d 1314 (M.D.

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

Fla. 1998), and in fact never cites to binding Eleventh Circuit precedent. The court in *Sarasota*

*Residences* focused on the following language from *Clohessy*:

> "This Court recognizes that it is well accepted that the forum
> where an action is first filed is given priority over subsequent
> actions, unless there is a showing of balance of convenience in
> favor of the second forum or there are special circumstances which
> justify giving the priority to the second action. These principles are
> consistent with the doctrine of federal comity which requires the
> federal district courts to refrain from interfering with each others'
> affairs in order to avoid duplication of judicial resources and
> conflicting decisions."

*Clohessy*, 9 F. Supp. 2d at 1316. To start, federal comity is not the *only* reason the first-filed rule

exists. It also exists to prevent forum shopping, streamline judicial resources, and maintain the

separation between the state and federal court systems. *See, e.g.*, *Colorado River Water*

*Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (emphasizing the duty of federal

courts to avoid duplicative litigation and conserve judicial resources). More importantly,

however, *Clohessy* did not need to address the issue of concurrent cases in state and federal

courts, because the two competing cases in *Clohessy* were both in federal courts; Allstate had

filed in the Middle District of Florida, while the defendants had filed in the District of

Connecticut. *Clohessy*, 9 F. Supp. 2d at 1315. The "close reading" therefore missed the most

relevant fact. Thus, *Mt. Hawley* not only is not binding on this court, but also was wrongly

decided based upon a misreading of another—also not binding—district court case.

Similarly, several other recent cases apply the same misreading of the case law. In

*Mellillo v. Shendell & Assocs., P.A.*, No. 11-62048-CIV, 2012 WL 253205 (S.D. Fla. Jan. 26,

2012), the court cited to *Mt. Hawley* in its determination that the first-filed rule did not apply.

*Mellillo*, 2012 WL 253205, at *2-3. However, as previously discussed, *Mt. Hawley* was based on

an improper reading of a non-binding case that did not even involve actions pending in state and

federal courts. Likewise, in *Artmark Prods. Corp. v. Conbraco Indus.*, No. 11-20879-CIV, 2012 WL 1155132, at *2 (S.D. Fla. Apr. 5, 2012), the court improperly placed extensive emphasis on the "two federal courts" language of *Convergys*, while once again citing to the erroneous decisions in *Mellillo* and *Mt. Hawley*. Finally, most recently, the court in *Sini v. Citibank, N.A.*, 990 F. Supp. 2d 1370, 1374-75 (S.D. Fla. 2014), once again disregarded the holding in *Haydu* and, relying on *Artmark*, *Mellillo*, and *Mt. Hawley*, determined that the first-filed rule does not apply.

Accordingly, because the federal action was filed first and because the first-filed rule applies as between parallel actions in state and federal courts, Bow Down's second-filed (or, rather, third-filed) third-party complaint in state court should not be permitted to move forward. Accordingly, this Court should apply the first-filed rule, stay the adjudication of the third-party complaint, and deny Bow Down's motion to dismiss.

**B.      Imposing a Stay on the Third-Party Complaint Is a Proper Exercise of This Court's Authority Under the All Writs Act and Is Appropriate in Light of the First Filed Rule.**

District courts are empowered to issue injunctions under the All Writs Act, 28 U.S.C. § 1651. This Act provides that the district courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreement to the usages and principles of law." This power, while exceptionally broad, is not unlimited, and is subject to the Anti-Injunction Act ("AIA"), 22 U.S.C. § 2283, which provides, "a court of the United States may not grant an injunction to stay proceedings in a state court except as expressly authorized by Act of Congress or necessary in the aid of its jurisdiction, or to protect or effectuate its judgments." In this case, two of the exceptions to the AIA apply: (1) in aid of jurisdiction, and (2) to protect or effectuate

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394 • (954) 377-8100

its judgments. Thus, this Court is empowered to grant Mount Vernon's request for an injunction pursuant to this Court's duty to apply the first filed rule.

While proceedings are pending, "a court may enjoin almost any conduct which, left unchecked, would have the practical effect of diminishing the court's power to bring the litigation to a natural conclusion." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1102 (11th Cir. 2004) (quoting *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978)). Nor does it matter that this Court's jurisdiction is fundamentally discretionary, as a federal court has the power under the All Writs Act to issue injunctive orders in a case even before the court's jurisdiction has been established. *See Barton*, 569 F.2d at 1359 n.19 (citing *FTC v. Dean Foods Co.*, 384 U.S. 597, 603-05 (1966)).

There is analogous Eleventh Circuit precedent for the injunction Mount Vernon seeks. In *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277 (11th Cir. 2002), the plaintiff in that case, William Riccard, was demoted by his employer, Prudential. *Id.* at 1282. Riccard then filed four separate lawsuits against Prudential, of which the court attempted to dispose in a principled fashion. *Id.* Eventually, the district court entered an injunction against Riccard from filing any new "action, complaint, or claim for relief" against "Prudential, its affiliates, or subsidiaries [in] federal court, state court, or any other forum" unless he first obtained leave from the district court to do so. *Id.* at 1295. The district court noted that "three or four lawsuits over one employment relationship is enough," *Id.*, and that "the court's power to protect its jurisdiction includes the power to enjoin a dissatisfied party bend on re-litigating claims that were (or could have been) previously litigated before the court from filing in both judicial and non-judicial forums, as long as the injunction does not completely foreclose a litigant from any access to the courts, which this one does not." *Id.* at 1295 n.15.

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

CASE NO. 9:15-cv-80072-DMM

Thus, dismissing the 2015 Case in favor of the vexatiously filed third-party complaint in state court would violate the first-filed rule, and Bow Down has put forward no compelling circumstances that would justify departing from that bedrock principle of American law. Accordingly, this Court should protect its jurisdiction, which it has already decided to exercise, by enjoining the third-party complaint in state court from moving forward until this Court has made a coverage determination on the merits.

III.    **Because the State Court Third-Party Complaint Is Not Properly Pleaded, This Court Should Not Dismiss the 2015 Case Unless and Until the State Court Chooses to Take Jurisdiction Over a Properly Pleaded Third-Party Complaint.**

Finally, because Bow Down's third-party complaint in state court is not properly pleaded as a third-party complaint, this Court should not dismiss the 2015 Case unless and until the state court chooses to take jurisdiction over a properly pleaded third party complaint. Doing so will prevent the possibility of *both* declaratory judgments being dismissed at the same time, thereby leaving both parties in a race to the courthouse and forcing the parties to litigate these same issues yet another time.

A third-party complaint in the Florida state courts is proper where the third-party defendant "may be liable to the defendant for all or part of the plaintiff's claim against the defendant." Fla. R. Civ. P. 1.180(a). The policy behind the rule is to avoid multiple actions in which the defendant, having been found liable, must then sue the party alleged to be an indemnitor. *See Gortz v. Lytal, Reiter, Clark, Sharpe, Roca, Fountain & Williams*, 769 So. 2d 484, 486 (Fla. 4th DCA 2000). However, the third-party complaint *must* allege either indemnification, subrogation, or contribution. *New York Buffet, Inc. v. Certain Underwriters at Lloyd's, London*, 950 So. 2d 438, 439 (Fla. 4th DCA 2007); *see also Houdaille Indus., Inc. v. Edwards*, 374 So. 2d 490 (Fla. 1979).

- 19 -

Bow Down's "third-party" complaint is an exact duplicate of the complaint forming the basis of this action. Nowhere in the Bow Down's third-party complaint is there any allegation of indemnification, subrogation, or contribution. Accordingly, in order to avoid a situation in which both this case and the state court declaratory judgment actions are dismissed—which would leave both parties without any case in which to resolve their dispute—this Court should not dismiss this case unless and until the state court has affirmatively accepted jurisdiction over the third party complaint.

## IV.   Conclusion

This Court should deny Bow Down's Motions to Dismiss—both with respect to Bow Down's claim and Mount Vernon's counterclaim—for several reasons.

- Bow Down's gamesmanship makes it grossly inequitable for the Court to refuse to hear this case.
- None of the nine *Ameritas* factors weigh in dismissal of this case.
- Dismissing this case in favor of the later-filed third-party complaint in state court would violate the first-filed rule, and Bow Down has put forward no compelling circumstances for refusing to apply it; and
- Bow Down's third-party complaint is not even properly plead, and thus dismissing this case could leave the parties without *any* case in which to receive an adjudication of their dispute.

Bow Down has attempted to avoid swift adjudication of this case in federal court from the very beginning, in an attempt to draw out its defense as long as possible in the underlying case. Bow Down's motions to dismiss should be denied.

WHEREFORE, Mount Vernon respectfully requests that the Court enter an Order denying Bow Down's Motion to Dismiss or Stay Counterclaim and further denying Bow Down's Motion for Leave to Dismiss Main Action; enter an injunction staying the proceedings in the third-party action in state court; and grant any other such relief that this Court deems just and appropriate under the circumstances.

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

### CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2015, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ Rory Eric Jurman
Rory Eric Jurman


Respectfully submitted,


s/Rory Eric Jurman
Rory Eric Jurman
Fla. Bar No. 194646
Email: rjurman@fowler-white.com

Stephen R. Gross
Fla. Bar No. 27849
Email: sgross@fowler-white.com

Aaron M. Dmiszewicki
Fla. Bar No. 111455
Email: admiszewicki@fowler-white.com

FOWLER WHITE BURNETT, P.A.
One Financial Plaza, Suite 2100
100 Southeast Third Avenue
Fort Lauderdale, Florida 33394
Telephone:    (954) 377-8100
Facsimile:     (954) 377-8101

CASE NO. 9:15-cv-80072-DMM

## SERVICE LIST

CASE NO. 9:15-cv-80072-DMM

Todd S. Stewart, Esquire
Todd S. Stewart, P.A.
824 West Indiantown Road
Jupiter, FL 33458
E-Mail: todd@trialcounselor.com;
Alicia@trialcounselor.com
Telephone: (561) 743-2002
Facsimile: (561) 743-2009
Attorney for BOW DOWN, INC.

4820-4502-6084, v. 1

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100